Francis NAUGHTON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 19, 1982.

Decided: Nov. 19, 1982.

Neal A. Phillips (argued), Wilmington, for defendant below, appellant.

John A. Parkins, Jr. (argued), and Ferris W. Wharton, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before QUILLEN, HORSEY and MOORE, JJ.

QUILLEN, Justice:

The defendant, Francis Naughton, was convicted of all nine counts contained in the indictment—four counts of Sexual Exploitation of a Child in violation of 11 *Del.C.* § 1108, two counts of Sodomy Second Degree in violation of 11 *Del.C.* § 765, and three counts of Conspiracy Second Degree in violation of 11 *Del.C.* § 512.

The defense originally contended in its opening brief that the Delaware statute on Sexual Exploitation of a Minor Child was unconstitutional, requiring dismissal of those statutory counts and the related conspiracy counts. That contention, however, has been abandoned in light of the recent decision of the United States Supreme Court in *New York v. Ferber*, —— U.S. ——, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), which was announced after defendant's opening brief.

■ A second contention is that prosecution of the four Sexual Exploitation counts is barred by 11 *Del.C.* § 209. That section of our Code deals with the effect of a prior prosecution in another jurisdiction. The statute has three subsections. Since the claim here rests on a prior plea to one count in the United States District Court of the District of Delaware under a plea bargain agreement, subsections (2) and (3), dealing with defensive collateral estoppel and the improper termination of a former prosecution, are irrelevant. The only conceivably relevant portion of the statute then terminates at the end of subsection (1). Thus limited, the statute reads as follows:

"When conduct constitutes an offense within the concurrent jurisdiction of this State and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this State under the following circumstances:

(1) The first prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in § 207 of this title and the subsequent prosecution is based on the same conduct, unless:

a. The offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil; or

b. The second offense was not consummated when the former trial began; ..."

Conviction as defined in 11 *Del.C.* § 207 includes a guilty plea.

Under the plea agreement in the Federal District Court the defendant did plead guilty to one count charging as follows:

"On or about the 24th day of June, 1980, at Wilmington, Delaware, in the Judicial District of Delaware, FRANCIS J. NAUGHTON, did knowingly use the mails for the mailing, carriage in the mails, and delivery of nonmailable matter, that is, a certain envelope addressed to Roger Mitros, P.O. Box 151, New Brunswick, N.J. 08903, and containing photocopies of obscene, lewd, lascivious, indecent, filthy, and vile photographs, all in violation of Title 18, United States Code, Section 1461."

The four Delaware State counts under the Sexual Exploitation statute charges as to four separate minors that the defendant "on several occasions, did knowingly photograph [the victim], a child, engaging in the simulation of prohibited sexual acts." The relevant portion of the State statute, 11 *Del.C.* § 1108(1) reads:

"A person is guilty of sexual exploitation of a child when:

(1) He photographs or films a child engaging in a prohibited sexual act or in the simulation of such an act; ..."

Prohibited sexual act is broadly defined at 11 *Del.C.* § 1103(e) for the purposes of the subchapter of our Criminal Code dealing with offenses relating to children or incompetents.

It seems perfectly clear that the federal offense to which the defendant entered a guilty plea and the four state counts each contain factual elements not included in the other and the law defining each is intended to prevent a substantially different harm or evil, the mailing, carriage and delivery of nonmailable matter as opposed to the photographing of children in the simulation of prohibited sexual acts. Thus, 11 *Del.C.* § 209 presents no bar to these prosecutions. This is of course underscored by the fact that the federal plea agreement expressly recites that "[t]he defendant ... and his

counsel fully understand that this agreement in no way binds the State of Delaware, Department of Justice, in its investigation into the activities of the defendant or any subsequent prosecutions which may follow from that investigation." The former prosecution as a bar contention is without merit.

■ Finally, we turn to the defendant's most significant contention. Dismissal is required, the defendant argues, because he was not tried within 120 days of his receipt into the custody of the State of Delaware as required by the Uniform Agreement on Detainers, 11 *Del.C.* § 2543(c). In particular, the statute reads:

"(c) In respect of any proceeding made possible by this section, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

The formal chronology does not appear to be in dispute:

November 19, 1980: Defendant sentenced on federal charge.

November 25, 1980: Defendant was indicted by the State of Delaware.

January 5, 1981: Delaware requests temporary custody under Uniform Agreement on Detainers Act.

March 24, 1981: Delaware obtains temporary custody.

March 31, 1981: Defendant was arraigned. Public Defender's Office entered its appearance.

May 4, 1981: Trial scheduled but continued at request of State. Rescheduled to June 1, 1981.

June 1, 1981: Trial scheduled but continued. No new date fixed.

June 4, 1981: Defendant present in open court. Representation and scheduling discussed. Office of Public Defender redesignated as counsel.

July 16, 1981: Counsel present at office conference with Superior Court Judge. Trial date fixed for September 8, 1981.

August 17, 1981: Defendant files motion to dismiss the indictment on the ground that there has been a violation of 11 *Del.C.* § 2543(c).

September 1, 1981: Fact hearing on motion was aborted due to conflict with Public Defender representation, the appointed Public Defender being a witness. Hearing rescheduled with Superior Court Judge ruling that the 120 day period was tolled until resolution of the motion.

October 1, 1981: Fact-finding hearing held on motion.

October 13, 1981: Superior Court opinion denying motion to dismiss.

November 5, 1981: Defendant's motion for reargument denied.

November 17, 1981: Trial was held and defendant found guilty of all counts.

The October 13, 1981 letter opinion of the President Judge carefully reviews the record facts and the evidence adduced at the hearing. The President Judge noted that the 120 day period required trial "by July 21, 1981, unless the period was tolled by the granting of a continuance 'for good cause shown in open court'." 11 *Del.C.* § 2543(c). He correctly noted that § 2544(c) specifically provides for dismissal with prejudice for a violation of the 120 day limitation.

But the Superior Court opinion recites the confusion that surrounded the defendant's legal representation. The State first assumed that the private attorney, who had represented the defendant in the United States District Court and who had represented the defendant with plea negotiations with the State, would continue. The State was told in late March or early April that such representation would not extend to the State charges. The State then had conversations with a second private attorney who was meeting with the defendant about representation. It was not until the end of April that the State learned that the defendant would not be represented by the second attorney. On May 11th, the prosecutor wrote the Court about the need to bring the case to trial. The case had been

listed for trial on May 4th, but the prosecutor had requested a continuance due to her involvement in an unrelated murder trial. It seems clear, however, that the case would not have been ready for trial. The case was continued again on June 1, evidently because the Superior Court scheduling office viewed the defendant as unrepresented.

On June 4, 1981, the defendant appeared in open court. The transcript makes it clear that due to the confusion over representation, no one had undertaken the active defense of the case. The Superior Court Judge, when faced with this situation, said he was "going to reappoint" the Public Defender and "direct them to assign a lawyer". He put the case on regular case review status to determine if there was to be disposition by plea or to "set a trial date." The active defense of the defendant began at that point and defense discovery requests were filed on July 15, 1981, the day before the office conference fixing the September 8th trial date. The filing of the motion to dismiss on August 17, 1981 was the cause of the delay thereafter.

It seems clear that the delay to the end of April was caused by activity relating to the obtaining of counsel by the defendant. As to this period, it is certainly appropriate to attribute the delay to the defendant, who was seeking private counsel. It is hard to justify the delay from May up to June 4 because it had become clear at the end of April that the two lawyers in the picture were not going to enter an appearance and the Public Defender's Office remained formally the attorney of record. In any event, we agree with the President Judge that the court appearance on June 4 effectively resulted in a reasonable continuance "for good cause shown" since it was clear no one had to that date prepared the case for the defense. In light of the case progress thereafter, in particular the defense discovery request of July 15th, it was reasonable to schedule the case for September 8th. Further delays in trial are attributable to the August 17th motion to dismiss. In short, we think the requirement of the "good cause" in § 2543(c) has been met by a continuance on June 4th for the purposes of defense preparation and the fixing of a trial date if necessary. As to the defendant's argument that he was constantly represented by the Public Defender's Office from the date of arraignment, we cannot improve on the comments of the President Judge:

"Defendant makes much of the fact that he had a lawyer from the very start, as evidenced by the fact that the Public Defender's Office never withdrew its original appearance and that no private attorney ever entered an appearance. This is not accurate. The Public Defender's Office may have been formally registered by the Case Scheduling Office as representing the defendant, but the *de facto* state of affairs was that he had no attorney. In fact, the Judge at the June fourth hearing reappointed the Public Defender. This implied that the Judge believed defendant was unrepresented on June 4, 1981. The defendant's lawyer problem had to be settled before the case could proceed. Defendant's representation problem, created and unresolved by the defendant, distinguishes this factual structure from that which existed in *Pittman v. State*, Del.Supr., 301 A.2d 509 (1973), which was concerned with the failure of officials to perform their duties under Section 2542(c) and (d)."

In our judgment, the motion to dismiss was properly denied because the continuance requirements of 11 *Del.C.* § 2543(c) were satisfied.

The judgment of the Superior Court is affirmed.