The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

**Linda Sue ESCH, Defendant–Appellant.**

**No. 86CA1686.**

Colorado Court of Appeals,
Div. V.

Aug. 3, 1989.

Rehearing Denied Aug. 31, 1989.

Certiorari Denied Jan. 29, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and John Milton Hutchins, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, and Janet Fullmer Youtz, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Linda Sue Esch, appeals the judgment of conviction entered on a jury verdict finding her guilty of two counts of sexual assault on a child, two counts of procurement of a child for sexual exploitation, and two counts of sexual exploitation of a child. She also contends that the trial court abused its discretion in imposing a sentence totalling 32 years. We affirm.

In 1985, a U.S. Postal Inspector instituted a "sting" operation for the purpose of uncovering pedophiles. This operation consisted of the establishment of a pen-pal type club for persons interested in child pornography. After obtaining the names and addresses of those whom he believed were involved in child pornography, the postal inspector mailed them a questionnaire. The questionnaire asked if they preferred various perverse sexual activities, and if they were interested in joining the club. If they indicated an interest, the postal inspector then mailed newsletters containing personal advertisements placed by postal inspectors posing as pedophiles wishing to correspond with others of like interest.

From information obtained in a similar operation in Ohio, a Thomas Blackledge in Greeley was sent a questionnaire. Blackledge began corresponding with the postal inspector. In his letters Blackledge indicated that he was friendly with a couple who had two small children and that the children performed sexual acts. Meetings between Blackledge and the postal inspector occurred in December 1985 and March 1986. At the March meeting Blackledge produced 15 sexually explicit photographs depicting Blackledge, the defendant, her husband, and their two small children. The postal inspector agreed to have the photographs duplicated and to pay Blackledge $150.

Subsequently, the postal inspector obtained warrants for the arrest of defendant and her husband and for a search of their home. Based on this information, defendant and her husband were charged, tried, and convicted in the United States District Court. She and her husband were then charged, tried, and convicted in state court. This appeal followed.

## I.

Defendant initially contends that the trial court erroneously determined that a conspiracy existed and admitted correspondence and statements of Thomas Blackledge.

## A.

She first argues that Blackledge's letters and statements did not qualify as admissible hearsay under the co-conspirator's exception. We disagree.

CRE 801(d)(2)(E) allows "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" to be admitted. In resolving preliminary questions of admissibility, the prosecution, as proponent of the co-conspirator's statement, bears the burden of establishing by a preponderance of the evidence that the defendant and declarant were members of a conspiracy and that the declarant's statement was made during the course and in furtherance of the conspiracy. *People v. Montoya*, 753 P.2d 729 (Colo.1988). The trial court may consider the statements of an alleged co-conspirator in determining whether the prosecution has established the evidentiary prerequisites for admissibility, but the co-conspirator's statement itself cannot be the sole basis for establishing those fundamental requirements. *People v. Montoya, supra.*

In determining that a conspiracy existed, the trial court relied on the following: the photographs, which depicted Blackledge together with defendant, defendant's husband, and their children; Blackledge's address book which contained defendant's name; the longstanding nature of defendant's relationship with Blackledge; a letter with defendant's husband's thumbprint obtained from Blackledge; telephone records; and Blackledge's letters and statements themselves. This evidence was sufficient to support the determination that a conspiracy existed during the relevant time

period and the admission of Blackledge's statements and letters.

### B.

Defendant also argues that Blackledge's letters bore insufficient indicia of authentication for admission into evidence. Again, we disagree.

CRE 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Testimony of a witness with knowledge that a matter is what it is claimed to be conforms to the requirements of this rule. CRE 901(b)(1); *see People v. Beltran*, 634 P.2d 1003 (Colo. App.1981).

The postal inspector testified that the questionnaire was signed by Thomas Blackledge. The letters were signed by "Tom," and were mailed to the postal inspector in response to mailings or telephone calls or personal meetings between the inspector and Blackledge. Since the postal inspector had knowledge of Blackledge and his handwriting, defendant's objections concerning the letters concerned their weight, not their admissibility.

### C.

Further, defendant contends that the prejudicial effect of the letters requires their exclusion from evidence, and that the trial court erred in ruling otherwise. We find no error.

If evidence has probative value in determining the central issue in dispute, a trial court's decision on its admissibility will not be reversed unless it is shown that there was an abuse of discretion. *People v. Lowe*, 660 P.2d 1261 (Colo.1983). If evidence is relevant, it is admissible, unless its prejudicial effect outweighs its probative value. *People v. Ortega*, 672 P.2d 215 (Colo.App.1983). Evidence surrounding a crime is admissible to establish the context in which the crime was committed, even if such events indicate commission of un-

related crimes. *Williams v. People*, 724 P.2d 1279 (Colo.1986).

A central issue in dispute was whether defendant was sexually exploiting her children. The letters and statements of Thomas Blackledge concerning defendant's sexual practices and preferences constitute relevant evidence of this issue and, thus, are probative of the crimes charged. And, even though these letters and statements indicate defendant's participation in other sexual activities, we conclude the trial court did not abuse its discretion in determining that their probative value outweighed their prejudicial effect, since they establish the context in which the crimes were committed.

### II.

Defendant next contends that, inasmuch as she has been convicted in United States District Court of the same criminal activity, Colorado prosecution is barred under § 18–1–303, C.R.S. (1986 Repl.Vol. 8B). We disagree.

Section 18–1–303(1)(a)(I), C.R.S. (1986 Repl.Vol. 8B) bars prosecution in Colorado following conviction in a state or federal court based on the same conduct unless:

"[t]he offense for which the defendant was formerly convicted or acquitted *requires proof of a fact* not required by the offense for which he is subsequently prosecuted and the law defining each of the offenses is intended *to prevent a substantially different harm or evil....*" (emphasis added)

Under the dual sovereignty doctrine, both the state and federal governments may prosecute a defendant based upon the same criminal conduct. *People v. Hines*, 194 Colo. 284, 572 P.2d 467 (1977). However, acquittal or conviction of federal charges based on the same conduct will act as a bar to state prosecution unless the federal action requires proof of a fact not required by the state offense. *Blum v. County Court*, 631 P.2d 1191 (Colo.App. 1981).

In the state prosecution, defendant was convicted of having violated §§ 18–6–

403(3)(b) and 18–6–404, C.R.S. (1986 Repl. Vol. 8B). Section 18–6–403(3) states:

"A person commits sexual exploitation of a child if, for any purpose, he knowingly:

.      .      .      .      .

(b) Prepares, arranges for, publishes, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes any sexually exploitative material...."

Section 18–6–404 provides:

"Any person who intentionally gives, transports, provides, or makes available, or who offers to give, transport, provide, or make available, to another person a child for the purpose of sexual exploitation of a child commits procurement of a child for sexual exploitation...."

In the federal prosecution, defendant was convicted of violation of 18 U.S.C. § 2251(a) (1978) which provides:

"Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), *if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.*" (emphasis added)

■ A review of the above statutes indicates that the federal statute requires proof of an additional element—either that the defendant "knows or has reason to know" that the visual depiction will be mailed, or that the visual depiction has actually been mailed. Furthermore, we conclude that the federal statute seeks to prohibit a substantially different evil than the Colorado statutes: the use of the mails in child exploitation. Because regulation of the mails is within the exclusive province of the federal government, prohibition of such activity serves a substantially different purpose than does the Colorado offense. *See State v. McKenna,* 188 Conn. 671, 453 A.2d 435 (1982); *Naughton v. State,* 453 A.2d 796 (Del.1982); *State v. Di Ventura,* 187 N.J.Super. 165, 453 A.2d 1354 (1982). Therefore, both the "additional fact" and the "different evil" requirements of § 18–1–303(1)(a)(I) were present here, and accordingly, the trial court did not err in refusing to dismiss the state prosecution.

### III.

We reject defendant's contention that the trial court erred in denying challenges for cause as to two prospective jurors.

■ Crim.P. 24(b) provides that a challenge for cause should be granted if a prospective juror is unwilling or unable to accept the basic principles of law applicable to the case, and to render a fair and impartial verdict based upon the evidence. *People v. Russo,* 713 P.2d 356 (Colo.1986). A trial court's ruling on a challenge for cause will not be disturbed on review absent an abuse of discretion. *People v. Wright,* 672 P.2d 518 (Colo.1983).

■ Here, one of the challenged jurors was a highly educated retired parochial school teacher. She stated that she would try to be a fair and impartial juror and was not unwilling or unable to accept the presumption of innocence or the burden of proof. The other juror in question had strong feelings about the subject matter of the trial. Nevertheless, his responses on *voir dire* established that, in spite of those views, he was capable of rendering a verdict based on the law and the evidence.

Therefore, in light of these circumstances, we conclude that the court did not abuse its discretion in denying defendant's challenges for cause.

### IV.

Defendant next contends that the postal inspector's conduct in carrying out the undercover operation was so outrageous as to

require reversal on due process grounds. We disagree.

 Defendant's argument is based solely on her due process rights as guaranteed by the United States Constitution. We agree with and adopt the analysis in *U.S. v. Esch*, 832 F.2d 531 (10th Cir.1987), where the court rejected defendant's identical contentions:

"We hold that the undercover operation did not constitute intolerable governmental conduct. The postal inspectors had knowledge, gleaned from a previous investigation, that Blackledge was a suspected pedophile. The agents did not introduce Blackledge to the defendants and did not provide any of the instrumentalities of the crime. Nor did the agents induce the defendants to engage in any activity that they were not otherwise disposed to undertake. While it is true that Carr encouraged Blackledge to take photographs, and that other mail was forwarded during the course of the ... operation, the postal inspectors' conduct was not outrageous in light of the clandestine nature of the activity that they were investigating."

V.

Finally, defendant contends that her 32–year sentence was unduly harsh and excessive. We disagree.

 A trial court has wide discretion in sentencing, and, absent an abuse of that discretion, an appellate court will not substitute its judgment. *People v. Madonna*, 651 P.2d 378 (Colo.1982).

The trial court sentenced defendant within the presumptive range as to each count, and appropriately considered the circumstances of the offenses, *People v. Phillips*, 652 P.2d 575 (Colo.1982), and defendant's potential for rehabilitation. *People v. Horne*, 657 P.2d 946 (Colo.1983).

It did not abuse its discretion in imposing consecutive sentences as to two of the counts since these consecutive sentences involved different victims, *People v. Montgomery*, 669 P.2d 1387 (Colo.1983), and, as such, constituted separate wrongs. *Quere-*

*shi v. District Court*, 727 P.2d 45 (Colo. 1986).

 The trial court focused on the harm to the two victims who were in a position of trust to defendant, the lack of defendant's rehabilitative potential, and the public interest. The record provides ample support for the trial court's sentencing decision; thus, we will not disturb it on review.

Judgment of conviction and sentence affirmed.

REED and RULAND, JJ., concur.