**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**William Lawrence GLADNEY, Defendant–Appellant.**

**No. 08CA0396.**

Colorado Court of Appeals, Div. III.

May 13, 2010.

John W. Suthers, Attorney General, Clemmie Parker Engle, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, William Lawrence Gladney, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder. We affirm.

In December 2004, defendant was charged in the instant case with having committed first degree murder. Before he was brought to trial on this charge, he was indicted, tried, and convicted in federal court of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 to 1968, based on seven acts of racketeering, one of which was the murder of the victim in this case. On appeal, his primary contention is that this conviction barred further proceedings against him in the present case.

At the trial in the present case, the prosecution presented evidence that (1) the forty-seven-year-old defendant was involved in dealing drugs in a high-volume crack cocaine operation located at the Alpine Rose Motel in Adams County; (2) on the day he was killed, the victim, one of defendant's regular customers, purchased drugs from defendant's seventeen-year-old girlfriend in defendant's absence; (3) after the victim later complained to the girlfriend that he had been "ripped off" with respect to the amount of drugs he had received, the girlfriend gave him a cash refund; (4) upon returning to the motel, defendant learned of the victim's complaints and directed an associate to get him a gun; (5) upon receipt of the gun, defendant located the victim, who called defendant a "punk"; and (6) defendant responded by saying, "Nobody ain't going to call me no punk ass bitch," shooting the victim in the head, and throwing his body down a stairwell in the motel.

Defendant did not testify. His defense was that the witnesses against him (i.e., the girlfriend and other crack-using occupants of the Alpine Rose Motel) conspired to frame him for the victim's murder because they wanted to "keep the crack flowing."

The jury found defendant guilty as charged, and the trial court sentenced him to

a term of life imprisonment without possibility of parole.

### I. Double Jeopardy

■■ Defendant contends that, because a federal jury found him guilty, by special verdict, of the victim's murder, the subsequent state prosecution for the same conduct violated his constitutional right to be free from double jeopardy as extended and codified in section 18–1–303, C.R.S.2009. We disagree.

■■ Both the federal and state constitutions contain provisions protecting individuals from being "twice put in jeopardy" for "the same offense." U.S. Const. Amend. V; Colo. Const. art. II, § 18. As pertinent here, these provisions generally protect an individual against a second prosecution after conviction for the same offense. *See People v. Leske*, 957 P.2d 1030, 1035 n. 5 (Colo.1998). "Under well-established federal law, [however,] both the state and federal governments may prosecute a person for the same offense without violating the double jeopardy prohibition of the federal constitution." *Chatfield v. Colorado Court of Appeals*, 775 P.2d 1168, 1175 n. 7 (Colo.1989). Even though states could, then, prosecute individuals following conviction in federal court for the same offense, many states—including Colorado—have rejected such a course of action. *Id.; see* § 18–1–303.

Section 18–1–303, which is titled, "Second trial barred by prosecution in another jurisdiction," provides, in pertinent part:

(1) If conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States, or another state, or of a municipality, a prosecution in any other of these jurisdictions is a bar to a subsequent prosecution in this state under ... the following circumstances:

(a) The first prosecution resulted in a conviction or an acquittal ... and the subsequent prosecution is based on the same conduct, unless:

(I) The offense for which the defendant was formerly convicted or acquitted requires proof of a fact not required by the offense for which he is subsequently prosecuted and the law defining each of the offenses is intended to prevent a substantially different harm or evil....

Section 18–1–303 thus sets forth a five-part test that must be met before a Colorado prosecution is barred by an earlier federal prosecution:

(1) the first prosecution must have resulted in a conviction or an acquittal;

(2) the same conduct must form the basis of both prosecutions;

(3) the conduct must constitute an offense within the concurrent jurisdiction of this state and of the United States;

(4) the offense for which the defendant was formerly convicted or acquitted requires proof of the same facts required by the offense for which he is subsequently prosecuted; and

(5) the law defining each of the offenses is intended to prevent substantially the same harm or evil.

■■ Here, we will assume, for purposes of argument, that the first and second tests have been satisfied, that is, that defendant was convicted in an earlier prosecution based, at least in part, on the same conduct (the murder of the victim) upon which he was subsequently subjected to prosecution in the present case.[1] Nonetheless, defendant cannot satisfy the remaining parts of the test set forth in section 18–1–303.

Initially, we observe, as did the trial court, that defendant's conduct did not "consti-

---

1. This assumption may be more than defendant deserves. Under federal law, only two predicate racketeering acts are necessary to support a RICO conviction. *See* 18 U.S.C. § 1961(5). Here, the federal jury found defendant committed six predicate acts in addition to the murder of the victim. Because none of the jury's findings regarding the predicate acts were disturbed on appeal, *see United States v. Hutchinson*, 573 F.3d 1011, 1033 (10th Cir.2009), the jury's find- ing with respect to the murder of the victim can be considered surplusage, inasmuch as it is unnecessary to support defendant's RICO conviction. *See People v. Porter*, 156 Ill.2d 218, 189 Ill.Dec. 413, 620 N.E.2d 381, 384 (1993) ("The Federal government could have won its [RICO] case without proving defendant guilty of [the victim's] murder; thus, the murder cannot be seen as a fact required to be proven.").

tute[ ] an offense within the concurrent jurisdiction of this state and the United States": the murder of the victim was prosecutable as an "offense" under Colorado law, but not under federal law. In this latter regard, we note that the federal murder statute, 18 U.S.C. § 1111, applies only in limited circumstances not present here. *See, e.g.,* 18 U.S.C. § 1114 (murder of a federal officer or any person assisting such an officer); 18 U.S.C. § 1116 (murder of a foreign official, an official guest, or an internationally protected person); 18 U.S.C. § 1120 (murder by escaped federal prisoners); 18 U.S.C. § 1153(a) (murder on a Federal reservation); 18 U.S.C. § 1652 (murder on the high seas); *see also Hackathorn v. Decker,* 243 F.Supp. 22, 24 (N.D.Tex.1965) (federal murder statute only applicable where the crime is committed on government property, or there are other circumstances that would give rise to federal court jurisdiction), *aff'd,* 369 F.2d 150 (5th Cir.1966).

Further, the federal RICO crime requires proof of facts not necessary for a Colorado murder conviction.

Pursuant to section 18–3–102(1)(a), C.R.S. 2009, "[a] person commits the crime of murder in the first degree if ... [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or another person." This was the only offense with which the State of Colorado charged defendant.

Under 18 U.S.C. § 1962(c), it is illegal for a person, through "a pattern of racketeering activity," to participate in the conduct of the affairs of any "enterprise" that affects interstate commerce. "Racketeering activity" is defined as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year," or any number of other enumerated federal offenses. 18 U.S.C. § 1961(1)(A). A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity ... occur[ing] within ten years." 18 U.S.C. § 1961(5).

Comparing the two statutes, the RICO statute requires proof of an "interstate commerce" element, which is not present in Colorado's murder statute; an "enterprise" element, which is not present in Colorado's murder statute; and a "pattern of racketeering activity" element, which is not found in Colorado's murder statute.[2] *Compare* 18 U.S.C. §§ 1961 to 1968 *with* § 18–3–102(1)(a); *see People v. Cooper,* 143 Misc.2d 654, 541 N.Y.S.2d 713, 714–15 (N.Y.Sup.Ct. 1989) (noting similar differences between RICO statute and New York's murder statute); *see also People v. Esch,* 786 P.2d 462, 465 (Colo.App.1989) (finding no bar to state prosecution for exploitation of a child following a conviction of the same type of offense in federal court in part because the federal statute required proof of an additional element, that is, that the defendant knew or had reason to know that a sexually explicit visual depiction of a child would be, or had actually been, mailed).

Finally, the federal RICO statute seeks to prohibit a substantially different evil than does Colorado's murder statute. As the court in *Cooper* noted, "The [murder] statute is designed to prevent the unlawful, intentional taking of a life. The purpose of the Federal RICO Act is ' ... to seek the eradication of organized crime in the United States ....' " *Cooper,* 541 N.Y.S.2d at 714; *see* Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922–23, *reprinted in* 1970 *U.S.C.C.A.N.* 1073 ("It is the purpose of [RICO] to seek the eradication of organized crime in the United States."); *see also State v. Cooper,* 211 N.J.Super. 1, 510 A.2d 681, 690–91 (N.J.Super.Ct.App.Div.1986) (purpose of RICO substantially different than state robbery statute); *cf. Esch,* 786 P.2d at 466 (federal exploitation of children statute, 18 U.S.C. § 2251, seeks "to prohibit a substantially different evil than the Colorado statutes: the use of the mails in child exploitation").

---

**2.** With regard to just the last matter, the practical effect is to require proof of one other criminal act to convict under RICO; no such requirement exists to convict a person under Colorado's murder statute.

For these reasons, we conclude that, contrary to defendant's assertion, double jeopardy did not bar his prosecution here.

## II. Res Gestae Evidence

■ Defendant next contends that the trial court erroneously admitted evidence of the victim's purchase of, and complaints about, drugs he obtained from defendant's girlfriend. We are not persuaded.

Over defendant's objection, the trial court ruled that "[i]f indeed the People are able to establish [a] foundation that the motive behind the killing that is claimed in this case was based upon the drug deal ... the jury's entitled to hear about [it]."

■ Defendant asserts that the evidence of the drug deal was inadmissible under CRE 404(b) as evidence of other bad acts. There is a difference, however, between CRE 404(b) other bad act evidence and res gestae evidence. *See People v. Quintana*, 882 P.2d 1366, 1372–74 (Colo.1994) (discussing the difference between res gestae and CRE 404(b) evidence).[3]

■ "Evidence of other offenses or acts that form part of the criminal episode or transaction with which a defendant is charged is admissible to provide the factfinder with a full understanding of the events surrounding the crime." *People v. Agado*, 964 P.2d 565, 567 (Colo.App.1998). "Such evidence, considered part of the res gestae of the offense, 'forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" *People v. Jimenez*, 217 P.3d 841, 864 (Colo.App.2008) (quoting *Quintana*, 882 P.2d at 1373).

While some homicides are committed on a whim, in most instances the perpetrator has a motive or purpose for killing the victim. Here, the evidence presented at trial established that defendant and the victim were involved in a disputed drug deal, about which they were arguing immediately before the shooting. This conduct was so closely connected to the main criminal transaction that evidence of it was necessary to complete "the story of the crime." Indeed, without that evidence, the murder might not be properly understood as the jury would have no basis upon which it could determine the reasons behind defendant's conduct.

■ We are not persuaded by defendant's arguments that the drug deal was extrinsic to the crime, and thus was not res gestae evidence, because (1) it occurred several hours prior to the shooting, and (2) defendant was not present when the victim purchased—and later complained about—the drugs he received. First, we have held that conduct occurring months, rather than mere hours, before a charged crime may be admissible as res gestae evidence, *see People v. Fears*, 962 P.2d 272, 280 (Colo.App.1997) (evidence of robbery committed months before murders admissible as res gestae evidence to give context to the murders). Second, defendant's presence during the drug deal is irrelevant: defendant learned about the drug deal from his girlfriend, and this information prompted defendant to find and, ultimately, kill the victim.

■ We acknowledge that even res gestae evidence is subject to exclusion under CRE 403 if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. *See People v. Rollins*, 892 P.2d 866, 873 (Colo.1995).

■ However, in assessing the admissibility of this evidence on appeal, we must assume the maximum probative value of the evidence regarding the drug deal, and the minimum prejudice reasonably to be expected, and we must accord substantial deference to the trial court's decision on this issue. *See Yusem v. People*, 210 P.3d 458, 467 (Colo.

---

3. In his opening brief, defendant requests that we abandon the res gestae doctrine and review the admissibility of all evidence of acts other than the charged act under a CRE 404(b) analysis. Even if we were so inclined, we could not do so. Our supreme court has recently recognized the ongoing viability of the res gestae doctrine as a ground for admitting evidence, *see, e.g., People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009), and we are bound to follow supreme court precedent. *See, e.g., Amos v. Aspen Alps 123, LLC,* —— P.3d ——, —— (Colo.App.2010); *People v. Smith*, 183 P.3d 726, 729 (Colo.App.2008).

2009). Viewed from these perspectives, we cannot conclude that the risk of unfair prejudice substantially outweighs the probative value of the evidence. While evidence that defendant was a drug dealer may have had some prospect of unfair prejudice, it also was highly probative as an explanation for defendant's actions toward the victim.

Accordingly, we perceive no error in the trial court's admission of the evidence challenged on appeal.[4]

### III. Prosecutorial Misconduct in Closing Arguments

We also reject defendant's contention that reversal is required because, during rebuttal closing argument, the prosecution improperly (1) commented on facts not in evidence; (2) suggested that the jury need not worry about convicting defendant because he would get a new trial if new evidence came out; (3) appealed to the jury's sympathy; and (4) injected personal opinion into the case.

▪ "Closing argument must be confined to the evidence admitted at trial, the inferences that can reasonably and fairly be drawn from it, and the instructions of law submitted to the jury." *People v. Rojas*, 181 P.3d 1216, 1223 (Colo.App.2008).

▪ "A prosecutor may comment on the evidence admitted at trial, the reasonable inferences that can be drawn from the evidence, and the instructions given to the jury," and "[h]e or she may ... point to circumstances that raise questions about, or cast doubt on, a witness's testimony, and may draw reasonable inferences from the evidence as to the credibility of witnesses," *People v. Welsh*, 176 P.3d 781, 788 (Colo.App. 2007). In doing so, he or she may ordinarily "employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance." *People v. Collins*, 250 P.3d 668, 678 (Colo.App.2010) (quoting *People v. Allee*, 77 P.3d 831, 837 (Colo.App.2003)).

▪ A prosecutor may not, however, misstate the evidence, *People v. Eckert*, 919 P.2d 962, 967 (Colo.App.1996); use arguments cal-

culated to inflame the passions and prejudices of the jury, *People v. Holloway*, 973 P.2d 721, 724 (Colo.App.1998); denigrate defense counsel, *Rojas*, 181 P.3d at 1223; or assert a personal opinion as to the guilt of the defendant or the credibility of witnesses, *Welsh*, 176 P.3d at 788.

▪ "Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury." *People v. Geisendorfer*, 991 P.2d 308, 312 (Colo.App.1999). In this regard, a prosecutor is afforded considerable latitude in replying to an argument by defense counsel. *People v. Wallace*, 97 P.3d 262, 269 (Colo.App.2004).

▪ "In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction." *People v. Merchant*, 983 P.2d 108, 114 (Colo.App.1999). Because the trial court is in the best position to make such an evaluation, its ruling will not be disturbed on appeal in the absence of a gross abuse of discretion resulting in prejudice and denial of justice. *Geisendorfer*, 991 P.2d at 312.

▪ Here, we conclude that:

(1) The prosecutor did not misstate, or mislead the jury about, the evidence when, in rebuttal closing, he stated, "[Defendant] took that gun, and he hit [the victim] on the top of the head," and "There were two wounds on the top of the head. Hit him a couple of times." These remarks, which were made in response to defense counsel's earlier comments that there had been no explanation of the victim's blunt force injuries and that the physical evidence did not "add up," were based on a reasonable inference that could be drawn from the evidence in the case, to

---

4. Similarly, we perceive no error resulting from the trial court's failure to give a limiting instruction in connection with this evidence. *See People*

*v. Coney*, 98 P.3d 930, 933 (Colo.App.2004) (limiting instruction not required for res gestae evidence).

wit: (a) defendant confronted the victim with gun in hand; (b) the two men argued; (c) three shots were heard; and (d) the victim's body evidenced one wound from a gunshot and fresh injuries to his scalp consistent with the application of blunt force trauma. The prosecution argued the reasonable inferences to be drawn from the location and type of the victim's injuries, and their significance. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1048 (Colo.2005) ("Closing argument allows advocates to point to different pieces of evidence and explain their significance within the case.").

(2) The prosecutor's statement, "[N]ew evidence comes out, they get a new trial, new evidence like we turn around and three months down the road, we give some deal to these people," was not reversible error. Defendant was concerned that the jurors could have inferred from the statement that they need not worry about mistakenly finding him guilty, because mistakes could be remedied later. The statement, however, (a) was made in response to defendant's earlier argument that the prosecution's witnesses were "bought and paid for" and (b) as the prosecution's immediately preceding and subsequent comments made clear, applied not to defendant, but to the prosecution's witnesses. As such, if there was any error, it was cured by the prosecution's clarifying comments. *See People v. Pipkin*, 762 P.2d 736, 737 (Colo.App. 1988) ("In view of the prosecution's clarification of the comments, as well as the overall context in which the comments were made, we find no impropriety warranting reversal.").

(3) The prosecutor's reference to defendant's girlfriend as a "17 year-old crack whore" was not, in our view, an appeal to the jury's sympathy, but, rather, a legitimate inference drawn from evidence that she had slept with defendant in exchange for crack cocaine.

(4) The prosecutor's statement that the theory of defense (namely, that the witnesses "were picking on [defendant]

so they can keep the crack flowing") was "such a stretch" that "it tells you pretty much everything you need to know about the defense in this case" did not inject prejudicial error into the case. This is so particularly in light of the court's having sustained defendant's objection thereto and noted, in the presence of the jury, "We don't make personal attacks [on defense counsel]." *See People v. Clark*, 214 P.3d 531, 542 (Colo.App.2009) (*cert. granted* Aug. 17, 2009) (trial court cured any error in prosecutor's closing comment by sustaining defendant's objection and immediately instructing jury that personal opinions of lawyers were not at issue).

For these reasons, we conclude that reversal is not warranted for prosecutorial misconduct in closing argument.

### IV. Cumulative Error

Finally, defendant asserts that the cumulative effect of the admission of bad character evidence and prosecutorial misconduct deprived him of a fair trial. As indicated above, we found no error in the admission of the challenged evidence. And, in our view, any errors that may have occurred during the prosecution's closing argument did not, singly or cumulatively, deprive defendant of a fair trial. *See People v. Grant*, 174 P.3d 798, 813 (Colo.App.2007).

The judgment of conviction is affirmed.

Judge ROY and Judge RICHMAN concur.