2012 COA 127

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Tonya Ann RHODUS, Defendant–Appellant.**

**No. 09CA2634.**

Colorado Court of Appeals, Div. IV.

Aug. 2, 2012.

Rehearing Denied Aug. 23, 2012.

---

John W. Suthers, Attorney General, Jillian Price, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LICHTENSTEIN.

¶ 1 Defendant, Tonya Ann Rhodus, appeals the judgment of conviction following jury verdicts finding her guilty of first degree criminal trespass, theft by receiving, and vehicular eluding. On appeal, Rhodus claims (1) there was insufficient evidence to sustain each of her convictions, (2) the trial court erred by allowing a police officer to provide expert testimony in the guise of lay opinion testimony, and (3) the prosecutor improperly argued facts not in evidence during closing arguments. Answering a question of first impression regarding what conduct must be proven to establish "entry" of a motor vehicle, we vacate her conviction for first degree criminal trespass, and affirm the judgment in all other respects.

## I. Sufficiency of the Evidence

¶ 2 We conclude that there was insufficient evidence to support the first degree criminal trespass conviction, but the evidence was sufficient as to the remaining convictions.

### A. Standard of Review

¶ 3 We review a sufficiency of the evidence challenge de novo. *Clark v. People,* 232 P.3d 1287, 1291 (Colo.2010). In doing so, we must determine, after viewing all the evidence as a whole and in the light most favorable to the prosecution, whether there was sufficient evidence to prove the charges beyond a reasonable doubt. *Id.*

### B. Factual Background

¶ 4 At trial, the jury was presented with the following evidence. Between November 26 and 28, 2008, C.M.'s 1996 silver Honda Prelude was stolen. The car was worth approximately $2,675. In the early morning hours of December 1, 2008, the police informed her that her car had been recovered.

¶ 5 Meanwhile, a silver Honda Prelude was involved in an incident on November 30, 2008, and recovered by police late that night. Earlier that evening, B.C. saw a female driving the Honda slowly down the street in front of her house. After the Honda turned the corner, B.C. heard a door slam. She saw a tall man walk in front of her house and come toward her driveway. B.C.'s son, who was also at home, told her that he could see the man attempting to break into B.C.'s car. After B.C. yelled at the man, he walked away.

¶ 6 B.C. and her son then saw what B.C. described as the same Honda slowly passing her home. B.C. testified that she saw the car's door open as if it were picking someone up. She could not say whether the man who walked toward her house was the same person who got into the car. The son testified that he could not see whether anyone got into the car, nor could he see where the man went.

¶ 7 The man was never identified or apprehended. However, when B.C. checked on her own car, the car door was open. She recalled that she had locked the door earlier that night.

¶ 8 A police officer dispatched to the area searched for the Honda that had just left the area. He found it parked on a residential street near B.C.'s home with the motor running. As he approached the car, he saw a single occupant, who was subsequently identified as Rhodus, in the driver's seat. When the officer walked up to the car, Rhodus sped away.

¶ 9 Another officer, who had just arrived in his cruiser, turned on his lights and sirens and pursued the fleeing car. During the chase, Rhodus drove well over the speed limit and around several sharp corners, crossing into the opposite lane. Twice, she suddenly slammed on her brakes, "brake-checking" the officer. She eventually turned into a cul-de-sac, drove over a residential front lawn and between a home and a large tree, and exited the cul-de-sac. Throughout the chase, no pedestrians or traffic were in the area.

¶ 10 The pursuing officer briefly lost sight of the car, but then found it abandoned on the front lawn of another home. It was partially obscured by a large pickup truck, the driver's door was open, and the car was running with no key in the ignition.

¶ 11 Shortly thereafter, a third officer spotted Rhodus standing by a van in the area near where the chase had occurred. The officer detained her until the pursuing officer arrived and identified her as the driver of the car.

¶ 12 The prosecution charged Rhodus with first degree criminal trespass of B.C.'s car, theft by receiving of C.M.'s 1996 Honda Prelude, and vehicular eluding. A jury found her guilty as charged and the court sentenced her to eight years intensive supervision probation on the theft by receiving count, with a suspended six-year term in the Department of Corrections. The court imposed concurrent six-year intensive supervision probation terms on the remaining two convictions.

¶ 13 This appeal followed.

## C. First Degree Criminal Trespass

¶ 14 Rhodus contends there was insufficient evidence to support her conviction for first degree criminal trespass of B.C.'s car because there was no evidence that anyone had entered it, which is an element of the crime. We agree with this contention.

¶ 15 "A person commits the crime of first degree criminal trespass ... if such person enters any motor vehicle with intent to commit a crime therein." § 18–4–502, C.R.S.2011. Additionally, under a complicity theory, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." § 18–1–603, C.R.S.2011.

¶ 16 At trial, the prosecution argued that the tall man seen by B.C. had committed criminal trespass by opening the locked car door and Rhodus was guilty of that offense under a complicity theory. According to a witness's testimony at trial, "[The man] was standing next to [B.C.'s car]. And he was like looking inside. It looked like he was trying to either mess with the door hinge or the window itself, the bottom.... He was at the window doing something." However, no evidence was presented indicating that anything inside the car had been moved, damaged, or taken.

¶ 17 The criminal trespass statute requires that a person "enters" a motor vehicle. § 18–4–502. Neither statute nor Colorado case law has defined what specific conduct must be proven to establish an "entry" of a motor vehicle. However, a few Colorado cases have addressed "entry" in the context of the burglary statutes. Therefore, we turn to these cases for guidance.

¶ 18 Our supreme court has held in a burglary case that the act of opening a trailer door that had been latched is insufficient to constitute an entry of the trailer. *People v. Simien*, 656 P.2d 698, 700 (Colo.1983). In

*Simien,* the owner of a roofing company closed and latched a trailer full of roofing materials that was on a job site. Later that night, the defendant and his brother went to the site to steal roofing materials. The defendant or his brother opened the trailer door. A roll of roofing material was found on the ground, but the owner was unable to say whether the roll had been there when he latched the trailer. The supreme court concluded that this evidence was insufficient to prove beyond a reasonable doubt that the structure had been entered. *Id.* At most, the opening of the trailer door constituted a substantial step toward the commission of the offense, and as such, was sufficient to establish only an attempted burglary. *Id.*

¶ 19 A division of this court also considered "entry" in a case involving second degree burglary of a building. While not addressing the sufficiency of the evidence, the division approved, as a correct statement of the law, a jury instruction stating, "The intrusion of any body part into the prohibited premises is sufficient to constitute entry." *See People v. Gonyea* 195 P.3d 1171, 1174–75 (Colo.App. 2008). The division concluded that the instruction was supported by *People v. Gomez,* 189 Colo. 91, 94, 537 P.2d 297, 299 (1975), "which implied that merely reaching a hand inside [a] store window was sufficient to constitute entry into the store." *Gonyea,* 195 P.3d at 1175. The division stated that this implication was consistent with the great weight of authority in other jurisdictions holding, under their burglary statutes, that an "entry" occurs when any part of the defendant's person passes the line of the threshold into the protected premises. *Id.* (citing Charles E. Torcia, *Wharton's Criminal Law* § 322 (15th ed. 1995)).

■ ¶ 20 We discern no meaningful difference between the requisite conduct constituting wrongful "entry" for purposes of burglary of structures and for purposes of criminal trespass of motor vehicles. Consequently, we are persuaded that an "entry" for purposes of criminal trespass of a motor vehicle requires an intrusion into the protected area of the motor vehicle.[1]

¶ 21 Other jurisdictions have likewise required the crossing of a threshold into the protected area of the motor vehicle under statutes similar to ours. These cases generally recognize an "entry" of the vehicle so long as there is an intrusion into the interior space of the vehicle, either with the whole or any part of the body or with an instrument appurtenant to the person's body, if it is introduced for the purpose of committing a crime therein. *See, e.g., State v. Sneed,* 38 N.C.App. 230, 247 S.E.2d 658, 659 (1978) (leaning through an open door with the upper body actually in the vehicle constitutes entry); *Richardson v. State,* 888 S.W.2d 822, 824 (Tex.Crim.App.1994) (reaching into the open bed of a pickup, which was construed to be an interior portion of the truck, constitutes an entry); *cf. Gant v. State,* 640 So.2d 1180, 1182 (Fla.Dist.Ct.App.1994) (no entry because, even though the car window was broken, there was no proof that any part of the defendant's body or an instrument used to commit a felony intruded into the airspace in the car); *State v. Faria,* 100 Hawai'i 383, 60 P.3d 333, 339 (2002) (no entry because neither the mace spray can nor any part of defendant's body crossed the threshold of the vehicle when defendant sprayed its occupants through the open window); *Griffin v. State,* 815 S.W.2d 576, 579 (Tex.Crim.App.1991) (opening a door to see inside or taking items attached to the exterior of the vehicle is not entry). Some courts reason that statutes proscribing entry of a motor vehicle are intended to protect the sanctity of the vehicle's private interior areas, and harm results from an intrusion into that area. *Richardson,* 888 S.W.2d at 824.

¶ 22 Here, no evidence was presented at trial that any portion of the tall man's body, much less any appurtenant instrument, passed the line of the threshold into the protected interior area of B.C.'s car. The People nonetheless assert that the jury could have inferred that, in order to open a car door without a key, a person would have to at

---

1. The protected area of the motor vehicle is not limited to the passenger portion of a motor vehicle, but may also include the open bed of a pickup truck, *see People v. Banuelos,* 40 Colo. App. 267, 268, 577 P.2d 305, 307 (1977), or the trailer portion of a semitrailer, *see People v. Walters,* 39 Colo.App. 119, 122, 568 P.2d 61, 64 (1977).

least enter the door jamb portion of the car. Such conduct, however, does not cross the threshold into the protected premises, and, therefore, is not sufficient to constitute an "entry." *See Gomez*, 189 Colo. at 94, 537 P.2d at 299; *Gonyea*, 195 P.3d at 1175; *see also Pack v. State*, 461 So.2d 910, 917 (Ala. Crim.App.1984) (attempting to pry open a car door with a tire tool was not "entry" within the meaning of the burglary of a vehicle statute); *Keys v. State*, 949 So.2d 1080, 1083–84 (Fla.Dist.Ct.App.2007) (removing window screens and inserting a deck spike into a door jamb was not "entry" for the purposes of trespass of a mobile home); *Gant*, 640 So.2d at 1182 (only a breaking, but not an entry, can be inferred without proof that the airspace in the car was broken by a part of defendant's body or an instrument used to commit a felony); *but see People v. Garcia*, 121 Cal.App.4th 271, 16 Cal.Rptr.3d 833, 839–40 (2004) (inserting a tool into a door jamb was an "entry" within the meaning of the burglary statute).

¶ 23 Thus, even considered in the light most favorable to the prosecution, evidence that a locked car door has been tampered with and opened is insufficient, in and of itself, to support a conviction for first degree criminal trespass. Consequently, Rhodus's conviction on this count must be vacated.

### D. Theft by Receiving

¶ 24 Rhodus contends there was insufficient evidence to support her conviction for class four felony theft by receiving of C.M.'s car. We reject this contention.

¶ 25 As pertinent here,

a person commits theft by receiving when he [or she] receives, retains, ... or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he [or she] intends to deprive the lawful owner permanently of the use or benefit of the thing of value.

§ 18–4–410(1), C.R.S.2011. When the value of the thing involved is $1000 or more but less than $20,000, theft by receiving is a class four felony. § 18–4–410(4), C.R.S.2011.

¶ 26 Rhodus first contends that the prosecution failed to present sufficient evidence that she knew the Honda Prelude was stolen and that she intended to deprive the lawful owner permanently of its use or benefit. Based on our review of the record as a whole, and viewing all the evidence in the light most favorable to the prosecution, we conclude the prosecution introduced sufficient evidence of conduct and circumstances showing Rhodus's knowledge and state of mind, because she operated the car without a key, attempted to elude police and conceal the car from them, and fled on foot, effectively abandoning the car. *See People v. Gibbons*, —— P.3d ——, ——, 2011 WL 4089964 (Colo.App.2011) (where a defendant is charged with theft by receiving, his or her state of mind as to whether the goods were stolen may be inferred from either his or her conduct or the circumstances of the case); *see also People v. Pedrie*, 727 P.2d 859, 862 (Colo.1986) (the prosecution may establish intent to deprive the lawful owner of a thing of value if it "proves a knowing use by the defendant inconsistent with the owner's permanent use and benefit"); *People v. Tumbarello*, 623 P.2d 46, 49 (Colo.1981) (a defendant's state of mind may be inferred from his or her conduct and the circumstances of the case).

¶ 27 Rhodus next asserts the prosecution did not prove that the Honda she drove was the same 1996 Honda Prelude that had been stolen from C.M. And as a result, she argues that C.M.'s testimony about the value of her car was too speculative to prove the value of the car recovered by the police.

¶ 28 The prosecution's proof of the car's ownership (to support its evidence of value) was weakened by the absence of testimony identifying the car or evidence of its vehicle identification number. However, we conclude that, considering both C.M.'s and officer Calicchia's testimony regarding the description and timing of the recovery of the car, the evidence was sufficient to permit the jury to reasonably infer that C.M. owned the car Rhodus was driving. *Clark*, 232 P.3d at 1292 ("we must give the prosecution the benefit of every reasonable inference which may be fairly drawn from the evidence").

¶ 29 Consequently, viewing the evidence in the light most favorable to the prosecution,

we conclude there was sufficient evidence to permit a reasonable juror to find Rhodus guilty of class four felony theft by receiving.

### E. Vehicular Eluding

■ ¶ 30 Rhodus contends there was insufficient evidence to permit the jury to find her guilty of vehicular eluding. Specifically, she asserts that because no individuals in the vicinity were placed at risk by her driving, the jury could not have found that she had driven "in a reckless manner." We are not persuaded.

¶ 31 Vehicular eluding is committed by

[a]ny person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he or she is being pursued by said peace officer, and who operates his or her vehicle in a *reckless manner.*

§ 18–9–116.5, C.R.S.2011 (emphasis added). A person acts recklessly when he or she consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists. *See* § 18–1–501(8), C.R.S.2011.

■ ¶ 32 Although Rhodus contends her driving did not create a "substantial risk" to the safety of any member of the public, a risk does not have to be "more likely than not to occur" or "probable" in order to be substantial. *People v. Hall,* 999 P.2d 207, 217 (Colo. 2000). Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great. *Id.*

¶ 33 At trial, the jury was presented with evidence that Rhodus drove at high speeds around sharp corners, drove on the wrong side of the street, drove over front lawns in a residential neighborhood, and braked suddenly several times in an apparent attempt to cause a collision with the pursuing officer. This evidence was sufficient to permit the jury to conclude that Rhodus's actions put the officer she was eluding at high risk of injury. And even if the probability of harm to other people was low because no one happened to be in the vicinity, the magnitude

of the potential harm was undeniably great. Consequently, the evidence was sufficient to support the vehicular eluding conviction.

### II. Opinion Testimony

■ ¶ 34 Rhodus contends that the trial court erred by permitting the pursuing officer to present expert testimony in the guise of lay opinion testimony. We perceive no reversible error.

¶ 35 Because Rhodus did not object to this testimony at trial, we review for plain error. *People v. Miller,* 113 P.3d 743, 749 (Colo. 2005). Plain error occurs when an obvious and substantial error so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *Id.* at 750.

■ ¶ 36 Lay opinion testimony is limited by the rules of evidence:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

CRE 701. "[P]olice officers regularly, and appropriately, offer testimony under Rule 701 based on their perceptions and experiences." *People v. Stewart,* 55 P.3d 107, 123 (Colo.2002). However, officer testimony is improper when it is essentially expert testimony admitted under the guise of lay opinions. *Id.* Thus, when an officer's opinion necessarily relies on his or her specialized training or education, the officer must be qualified as an expert. *Id.*

¶ 37 At trial, Rhodus challenged the pursuing officer's identification of her as the driver by eliciting testimony from him that the driver of the car was wearing a red jacket, but she was not wearing a red jacket when she was arrested. On redirect, the following colloquy, which Rhodus claims on appeal is expert testimony, took place:

[Prosecutor]: Okay. When you are dealing with foot chases, do you ever have to deal with that, you know, you've lost—

[Pursuing Officer]: Yes, sir.

[Prosecutor]: You lost sight of the suspect, they take off running?

[Pursuing Officer]: Yes, sir.

. . . .

[Prosecutor]: When you are dealing with suspects like that who fled on foot, you've lost sight of them for a moment, and in your training and experience are you always going to find them wearing the exact same clothes?

[Pursuing Officer]: Actually it's rare to find them wearing the same exact clothes.

[Prosecutor]: Why is that?

[Pursuing Officer]: They almost always take off their shirt or throw some kind of article of clothing, take some kind of article of clothing off. As a matter-of-fact our K–9 teams, as a matter-of-fact our K–9 teams [sic] train the dogs to look for items that have been dropped or thrown as they are tracking for a suspect because it almost always happens.

¶ 38 We conclude that the admission of this testimony does not warrant reversal.

¶ 39 Even assuming, without deciding, that this testimony was an opinion based on the officer's "training and experience," we conclude that the error, if any, was harmless. The evidence was only relevant to support an inference that Rhodus had discarded a red jacket after driving the car. Other testimony from this officer would have permitted the jury to reach the same conclusion. Indeed, the officer testified that there was no doubt in his mind that Rhodus was the driver of the car; that the car had been found abandoned; that a red jacket was found in the area; and that Rhodus had been wearing a red jacket when she was driving the car, but not when she was arrested. Consequently, we cannot conclude that the admission of the officer's testimony so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of Rhodus's conviction. Cf. *Stewart*, 55 P.3d at 124 (expert testimony admitted under the guise of lay opinion testi-

mony harmless where other evidence corroborated that testimony).

III. Prosecutorial Misconduct

¶ 40 Rhodus contends that the trial court abused its discretion by permitting the prosecutor to improperly discuss facts not in evidence during closing argument. We conclude the facts referred to by the prosecution were part of the record and, therefore, perceive no abuse of discretion.

¶ 41 "The scope of closing argument rests in the sound discretion of the trial court." *People v. Gomez–Garcia,* 224 P.3d 1019, 1024 (Colo.App.2009) (citing *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo. 2005)). As a result, we will not disturb a trial court's ruling regarding the scope of closing argument absent a showing of gross abuse of discretion. *Id.*

¶ 42 At trial, Rhodus elicited testimony that the driver of the car was wearing a red jacket, but that she was not wearing one when she was arrested. In response, as noted, the prosecution elicited testimony, on redirect, that suspects who flee on foot almost always discard some article of clothing. The prosecution also elicited testimony that a red article of clothing was found in the area:

[Prosecutor]: Okay. To your knowledge was a red piece of clothing ever found?

[Pursuing Officer]: Yes sir.

[Prosecutor]: And when was that?

[Pursuing Officer]: That night—it was not found that night.

[Defense Counsel]: Objection, I'm going to just object to hearsay at this point.

The Court: Well, I sustained [sic] that objection.

¶ 43 During closing argument, the prosecutor argued that a red jacket had been found in the area and the jury could infer that Rhodus had discarded it prior to being detained. Rhodus objected to this argument based on the court's hearsay ruling. The court overruled this objection stating, "Well, the second objection was sustained. His initial testimony was no—there was no objection imposed or request to strike."

¶ 44 After reviewing the record, we agree with the trial court and conclude that Rhodus did not object to the testimony that a red article of clothing was found and she did not move to strike that testimony. Rather, the record shows she objected to later testimony regarding when the article of clothing was found.

¶ 45 Therefore, the fact that a red article of clothing was found is part of the record. *People v. McGrath,* 793 P.2d 664, 667 (Colo. App.1989) ("Once evidence, even if arguably excludable, is admitted without objection and retained without a motion to strike, the jury is generally free to consider it."). Consequently, the trial court did not abuse its discretion by permitting the prosecution to discuss this fact and the inferences reasonably drawn from it during closing argument. *See Domingo–Gomez,* 125 P.3d at 1049 (in closing argument, a prosecutor may discuss any facts in evidence and the reasonable inferences that may be drawn therefrom).

¶ 46 Moreover, the pursuing officer's testimony was arguably based on his own knowledge and it does not clearly incorporate hearsay statements. Thus, we cannot say that the testimony was "totally incompetent and easily recognizable as such." *People v. Montague,* 181 Colo. 143, 145, 508 P.2d 388, 389 (1973).

IV.   Conclusion

¶ 47 For the reasons set forth above, the conviction for first degree criminal trespass is vacated. The judgment is affirmed in all other respects.

Judge WEBB and Judge CARPARELLI concur.