2015 COA 172

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Mark Richard WENTLING,
Defendant–Appellant.**

**Court of Appeals No. 12CA1423**

Colorado Court of Appeals,
Div. I.

Announced December 3, 2015

Rehearing Denied January 7, 2016

Cynthia H. Coffman, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sean J. Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE TAUBMAN

¶ 1 Defendant, Mark Richard Wentling, appeals his judgment of conviction entered on a jury verdict finding him guilty of first degree criminal trespass with intent to commit motor vehicle theft under sections 18–4–502 and 18–4–409(4), C.R.S.2015. He also appeals his presentence confinement credit (PSCC) award. We affirm the judgment of conviction for first degree criminal trespass, reverse the sentence in part, and remand to the trial court to correct the mittimus accordingly regarding PSCC.

## I. Background

¶ 2 On April 5, 2011, police officers arrested Wentling in Utah after finding him sleeping in a vehicle that had been reported as stolen in Colorado. The next day, Wentling was charged with multiple offenses in Colorado, including first degree criminal trespass with intent to commit motor vehicle theft.[1] Three days later, Wentling was charged in Utah with unauthorized control of a vehicle for an extended time. He remained in custody in Utah and pleaded no contest to the Utah charge in May 2011. In June 2011, Wentling was sentenced by a Utah court to zero to five years in prison.

¶ 3 Wentling was transported from the Utah Department of Corrections to the Moffat County Jail in Colorado on October 11, 2011, pursuant to a detainer agreement between Colorado and Utah. In November 2011, Wentling's initial Colorado charges were amended to include two habitual criminal counts.

¶ 4 Following an initial trial in February 2012 that resulted in a mistrial, a jury convicted Wentling at his second trial in April 2012 of first degree criminal trespass with intent to commit motor vehicle theft and second degree trespass. On May 29, 2012, the trial court sentenced Wentling to six years in the custody of the Department of Corrections plus three years mandatory pa-

---

1. Initially, Wentling was also charged with first degree aggravated motor vehicle theft under section 18–4–409(2), C.R.S.2015; however, the original aggravated motor vehicle theft count was later dismissed. Unlike the charge for aggravated motor vehicle theft, the criminal trespass charge did not specify a subsection of the motor vehicle theft statute nor include any aggravating factors. Therefore, we assume the intent to commit motor vehicle theft portion of the charge was under section 18–4–409(4) and not section 18–4–409(2).

role. The trial court awarded Wentling 112 days PSCC for his time in the Moffat County Jail from February 7, 2012 [2] to May 29, 2012. Wentling filed a motion seeking eighty-nine days of additional PSCC, which the trial court denied.

¶ 5 Wentling raises four issues on appeal: (1) the evidence presented at trial was insufficient to convict him of first degree criminal trespass with intent to commit motor vehicle theft; (2) his Colorado prosecution violated section 18-1-303, C.R.S.2015, because he had already been prosecuted in Utah under a law intended to prevent substantially the same harm; (3) he was denied equal protection of the law when he was subjected to a harsher punishment for first degree criminal trespass with intent to commit motor vehicle theft than punishment under attempted motor vehicle theft; and (4) the trial court incorrectly calculated his PSCC. We reject his first three assertions, but we agree with his fourth.

## II. Sufficiency of Evidence

¶ 6 Wentling contends there was insufficient evidence to convict him of first degree criminal trespass with intent to commit motor vehicle theft. First, he contends the first degree criminal trespass statute's plain language requires the People to present evidence that he committed a crime inside the vehicle. Wentling argues that motor vehicle theft is not a crime committed inside the vehicle and, thus, the People did not present sufficient evidence to prove he entered the motor vehicle with the intent to commit a crime therein.

¶ 7 Second, Wentling contends that if the first degree criminal trespass statute is ambiguous, it does not apply in this case for three reasons: (1) to construe the statute as applying to the facts of this case would render part of it superfluous; (2) the People's application of the first degree criminal trespass statute here is contrary to the comprehensive motor vehicle theft statute; and (3) applying it in this case would be inconsistent with the statute's legislative history. We disagree.

2. The trial court accepted Wentling's unopposed assertion that his Utah sentence was completed

### A. Standard of Review

¶ 8 We review the record de novo to determine whether the evidence before the jury was sufficient in quality and quantity to sustain the conviction. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). In doing so, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Williams,* 2012 COA 165, ¶ 34, 297 P.3d 1011, 1017 (citation omitted).

### B. Applicable Law

¶ 9 Due process requires the prosecution to prove the existence of every element of an offense charged beyond a reasonable doubt. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25; *People v. Duncan,* 109 P.3d 1044, 1045 (Colo.App.2004). Thus, a conviction based on a record containing insufficient evidence of an element of an offense violates a defendant's right to due process. *Duncan,* 109 P.3d at 1045.

¶ 10 In construing a statute, a reviewing court must give effect to the intent of the legislature. *Gorman v. People,* 19 P.3d 662, 665 (Colo.2000). In determining that intent, a court should look first to the plain language of the statute. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). If the statute is unambiguous, the court should look no further. *Mason v. People,* 932 P.2d 1377, 1378 (Colo.1997). Statutory construction principles should only be relied on when the statute is ambiguous. *Grant v. People,* 48 P.3d 543, 546 (Colo.2002).

¶ 11 When looking at the plain language of the statute to determine legislative intent, a court should consider the plain and ordinary meaning of the words the legislature chose to use. *People v. Banks,* 9 P.3d 1125, 1127 (Colo.2000); *see also Griego v. People,* 19 P.3d 1, 7 (Colo.2001) (stating that

on February 7, 2012.

words and phrases should be read in context and construed according to the rules of grammar and common usage); *Vega v. People*, 893 P.2d 107 (Colo.1995) (asserting that words and phrases used are to be read in context and accorded their plain meanings). The statute should be read and considered as a whole to give consistent, harmonious, and sensible effect to all its parts. *Dist. Court*, 713 P.2d at 921.

¶ 12 Colorado's first degree criminal trespass statute provides that it is a class five felony for a person to enter "any motor vehicle with intent to commit a crime therein." § 18–4–502. Wentling was convicted of criminal trespass with the intent to commit motor vehicle theft. A person commits second degree aggravated motor vehicle theft if he or she knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception. § 18–4–409(4).

### C. Analysis

¶ 13 Wentling contends he was improperly prosecuted for first degree criminal trespass, an offense which was not intended to apply to the theft of motor vehicles. He contends that under the first degree criminal trespass statute's plain meaning, and even under the rules of statutory construction, the statute does not apply to him. We conclude there was sufficient evidence to convict Wentling of first degree criminal trespass under the plain meaning of the statute. Further, we conclude there was sufficient evidence that Wentling entered the motor vehicle with the intent to commit motor vehicle theft inside the vehicle.

¶ 14 First, we must construe the first degree criminal trespass statute. We conclude that the statutory language is clear. Therefore, we need not consider the legislative history cited by Wentling. Wentling argues that "therein," an adverb, modifies the meaning of the verb "commit," limiting the location of where the crime may occur to inside a motor vehicle. We agree. Therefore, based on the plain language of the first degree criminal trespass statute, a defendant must enter a motor vehicle with the intent to commit any crime inside of a motor vehicle.

*See People v. Steppan*, 105 Ill.2d 310, 85 Ill.Dec. 495, 473 N.E.2d 1300, 1303–04 (Ill. 1985) (construing the inclusion of the word "therein" in a similar motor vehicle theft statute as requiring a defendant's intent to commit a felony to coincide with unauthorized entry, rather than requiring the defendant to intend to steal something within the motor vehicle). We disagree with Wentling's contention that this construction renders "therein" superfluous. "Therein" is still necessary under this construction because it limits the location of criminal activity relevant to the first degree criminal trespass offense.

¶ 15 The plain language of the criminal trespass statute states that "a" crime must be committed inside the vehicle. § 18–4–502. "A" is an indefinite article indicating that the noun it refers to is not particular, and it is "used as a function word before most singular nouns ... when the individual in question is undetermined, unidentified, or unspecified." *Webster's Third New International Dictionary Unabridged* 1 (2002); *see People v. Arzabala*, 2012 COA 99, ¶ 27, 317 P.3d 1196, 1204; *see also Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("[T]he definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' ").

¶ 16 The legislature's use of an indefinite article in the plain language of the statute indicates its intent to generally proscribe crimes that accompany unlawful entry into a vehicle without any limitation to the category or type of crime. Thus, conceivably, motor vehicle theft is a crime that could accompany criminal trespass.

¶ 17 We also disagree with Wentling's contention that the application of the first degree criminal trespass statute to motor vehicle theft would be contrary to the comprehensive motor vehicle theft statute, section 18–4–409. Wentling contends the General Assembly could not have intended that criminal trespass apply to motor vehicle theft because of the comprehensive nature of the motor vehicle theft statute.

¶ 18 "[E]nactment by the General Assembly of a specific criminal statute does

not preclude prosecution under a general criminal statute unless a [clear] legislative intent is shown to limit prosecution to the special statute." *People v. Bagby*, 734 P.2d 1059, 1061 (Colo.1987); *see also People v. Smith*, 938 P.2d 111, 115 (Colo.1997); *People v. Clanton*, 2015 COA 8, ¶ 11, 938 P.3d 1111. The determination of whether there is a clear legislative intent to limit prosecution in this manner turns on whether: (1) "the statute invokes the full extent of the state's police powers"; (2) "the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area"; and (3) "the act carefully defines different types of offenses in detail." *Smith*, 938 P.2d at 116 (citing *People v. Warner*, 930 P.2d 564, 568 (Colo.1996), and *Bagby*, 734 P.2d at 1062); *see also People v. Tow*, 992 P.2d 665, 667 (Colo.App.1999).

¶ 19 Here, there is no indication that section 18–4–409 was intended to invoke the full extent of the state's police powers, unlike in *Bagby*, where the supreme court found that "the General Assembly [ ] declared that the Liquor Code [wa]s adopted as 'an exercise of the police powers of the state for the protection of the economic and social welfare and the health, peace and morals of the people of the state' " and that such a declaration suggested a full exercise of police power and a consideration of the full range of possible sanctions in selecting those most appropriate for punishment. 734 P.2d at 1062 (quoting Ch. 72, sec. 1, § 12–47–102, 1976 Colo. Sess. Laws 456); *but see People v. Montante*, 2015 COA 40, ¶¶ 15–17, 351 P.3d 530, 537 (stating that the medical marijuana registry fraud statute did not emphasize the protection and welfare of the general public); *People v. Stansberry*, 83 P.3d 1188, 1190 (Colo.App. 2003) (finding no broad invocation of police powers in motor vehicle tax legislation). Section 18–4–409 contains no language comparable to that in *Bagby* showing that the General Assembly intended to invoke the full extent of the state's police power in enacting the motor vehicle theft statute.

¶ 20 Also, there is no indication in section 18–4–409 or elsewhere that it was intended to control all aspects of motor vehicle theft in Colorado, nor is there any indication that the motor vehicle theft statute is a thorough legislative consideration of all aspects of motor vehicle theft. In *Bagby*, the supreme court found that the structure of the Liquor Code indicated "a thorough legislative consideration of all aspects of the licensing process." 734 P.2d at 1062. Further, in *Bagby*, the supreme court concluded that pursuant to the Liquor Code, a prosecutor must charge prohibited conduct under the Liquor Code rather than under a similar provision of the criminal code, unless authorized by the legislature. *Id.*; *see also Warner*, 930 P.2d at 568 (Limited Gaming Act controls "all aspects of limited stakes gambling in Colorado."); *Stansberry*, 83 P.3d at 1190 (holding that motor vehicle registration and taxation statutes created "a comprehensive and thorough regulatory scheme"). We see none of these restrictions here. Section 18–4–409 does not limit motor vehicle theft prosecution to that section alone. Thus, we are not persuaded that section 18–4–409 was intended to control all aspects of motor vehicle theft.

¶ 21 Further, the legislature can punish the same conduct with more than one offense by creating multiple statutory sections punishing the conduct. *See People v. Barry*, 2015 COA 4, ¶¶ 108–11, 349 P.3d 1139, 1159. "[W]here two criminal statutes apply to the same conduct, the 'general rule' allows prosecutions under either statute." *People v. Davis*, 218 P.3d 718, 732 (Colo.App.2008) (quoting *People v. Stewart*, 55 P.3d 107, 118 (Colo.2002)); *see Stewart*, 55 P.3d at 118 (applying the "general rule" that "the prosecution has discretion to determine what charges to file when a defendant's conduct violates more than one statute"). Here, even if we assume Wentling could have been charged under both the first degree criminal trespass with intent to commit motor vehicle theft statute and the attempted motor vehicle theft statute, the People had discretion to prosecute under either.

¶ 22 Second, we conclude that the People presented sufficient evidence to support Wentling's conviction for first degree criminal trespass. Wentling contends there was insufficient evidence that he intended to commit a crime *inside* the vehicle as re-

quired because "motor vehicle theft is not an offense committed inside the vehicle." We conclude there was sufficient evidence that Wentling intended to commit a crime inside the vehicle because Wentling exercised possession and control over the vehicle from *within* the vehicle. He broke into the motor vehicle and drove away from the scene *from inside the motor vehicle.*

¶ 23 Contrary to Wentling's contention, vehicle theft can occur inside of a vehicle. Indeed, the most common way to exercise control over a vehicle (driving) requires entry into the vehicle. *See People v. Marquez,* 107 P.3d 993, 998 (Colo.App.2004) (affirming judgment where the defendant was convicted of first degree aggravated vehicle theft when found driving a stolen vehicle).

¶ 24 Considering the evidence as a whole, and viewing it in the light most favorable to the prosecution, we conclude there was sufficient evidence to convict Wentling of first degree criminal trespass.

### III. Barred Colorado Prosecution

¶ 25 In the alternative, Wentling contends he was improperly prosecuted in Colorado in violation of section 18–1–303. He argues he was previously convicted in Utah for the same conduct, and his subsequent Colorado prosecution was barred because the Colorado and Utah laws address substantially the same harm or evil. We disagree.

### A. Standard of Review

¶ 26 We review an unpreserved challenge, as here, for plain error. *People v. Randell,* 2012 COA 108, ¶ 83, 297 P.3d 989, 1006. We will not reverse a conviction for plain error unless there was: (1) error that was (2) obvious and (3) so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment. *People v. Miller,* 113 P.3d 743, 750 (Colo.2005). We examine the record de novo to determine whether error occurred. *People v. Rediger,* 2015 COA 26, ¶ 24, 411 P.3d 907 (We "start by weighing the evidence to apply the first plain error requirement— error. We do so de novo.").

### B. Applicable Law

¶ 27 In Utah, "unauthorized control for [an] extended time" has the following elements: (1) that the defendant exercise unauthorized control over a motor vehicle that is not his or her own; (2) without the consent of the owner; and (3) with the intent to temporarily deprive the owner of possession of the motor vehicle. Utah Code Ann. § 41–1a–1314(1) (West 2015). If the defendant does not return the motor vehicle to the owner within twenty-four hours, the offense becomes a third degree felony. § 41–1a–1314(3)(a).

¶ 28 In Colorado, first degree criminal trespass with intent to commit motor vehicle theft requires proof of entry into a motor vehicle with intent to commit motor vehicle theft therein. § 18–4–502; see § 18–4–409(4). Motor vehicle theft requires knowingly obtaining or exercising control over the motor vehicle of another without authorization or by threat or deception. § 18–4–409(4).

¶ 29 If conduct constitutes an offense within the concurrent jurisdiction of Colorado and another state, a subsequent prosecution in Colorado is barred if: "(1) the first prosecution [ ] resulted in a conviction or an acquittal; (2) the same conduct [ ] form[s] the basis of both prosecutions; [and] (3) the conduct [ ] constitute[s] an offense within the concurrent jurisdiction of this state and of the [other state]." *People v. Gladney,* 250 P.3d 762, 766 (Colo.App.2010); *see* § 18–1–303(1). However, the People may prosecute someone a second time for the same conduct if "[t]he offense for which the defendant was formerly convicted ... requires proof of a fact not required by the offense for which he is subsequently prosecuted and the law defining each of the offenses is intended to prevent a substantially different harm or evil." § 18–1–303(1)(a)(I). Thus, a subsequent prosecution in Colorado is barred unless both exceptions apply; that is, when (1) the first offense requires proof of a fact not required by the second offense and (2) the law defining each offense is intended to prevent a substantially different harm or evil. *See Gladney,* 250 P.3d at 766.

## C. Analysis

¶ 30 Wentling contends the trial court committed plain error when it allowed the People to prosecute him for first degree criminal trespass with intent to commit motor vehicle theft after his Utah conviction based on the same conduct. We conclude the trial court did not commit plain error.

¶ 31 We conclude that even if the first three elements and the first exception discussed in *Gladney* were satisfied here, whether the Colorado and Utah offenses were intended to prevent substantially different harms or evils—the second exception—would not have been obvious to the trial court. Consequently, Wentling's prosecution under the Colorado statute was not barred by section 18-1-303(1).

¶ 32 We first consider whether any error would have been obvious. We conclude that it would not have been. Generally, an error is not obvious where "nothing in our statutes or previous case law would have alerted the court" to the error. *People v. Mendoza,* 313 P.3d 637, 641 n.4 (Colo.App. 2011); *see People v. Zubiate,* 2013 COA 69, ¶ 24, 411 P.3d 757 (*cert. granted* June 16, 2014) ("An error may be obvious if the issue has been decided by a division of this court or the Colorado Supreme Court, or if the trial court has erroneously applied statutory law."). Here, there were no cases interpreting the purposes of the statutes, and the purposes were not expressly delineated. Therefore, we conclude any error was not obvious and, thus, we need not address the other elements of the plain error test.

¶ 33 Therefore, we conclude Wentling's criminal trespass conviction did not constitute plain error and was not barred by the prior Utah prosecution.

## IV. Equal Protection

¶ 34 Wentling contends that when the People charged him with first degree criminal trespass with intent to commit motor vehicle theft rather than attempted motor vehicle theft, it violated his right to equal protection under the law because it subjected him to more severe punishment. Wentling contends that the same conduct is prohibited by first degree criminal trespass and attempted motor vehicle theft, but the latter offense provides for a lesser sentence. He argues that both laws prohibit similar acts and require similar mental states because the required act for attempted motor vehicle theft encompasses the required act for first degree criminal trespass and both offenses require that a substantial step be completed while intending to commit the underlying crime. We disagree.

## A. Standard of Review

¶ 35 In the absence of a traditionally suspect class, the implication of a fundamental right, or some other classification warranting review under intermediate scrutiny, we apply a rational basis standard of review. *People v. Blankenship,* 119 P.3d 552, 554–555 (Colo.App.2005). Under a rational basis standard, the challenging party must prove beyond a reasonable doubt that the classification at issue bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is unreasonable, arbitrary, or capricious. *Id.* Further, "[i]f any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist." *Christie v. Coors Transp. Co.,* 933 P.2d 1330, 1333 (Colo.1997).

## B. Applicable Law

¶ 36 The United States and Colorado Constitutions guarantee equal protection of the laws. U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25. "Equal protection of the laws assures that those who are similarly situated will be afforded similar treatment." *People v. Rickstrew,* 775 P.2d 570, 574 (Colo.1989).

¶ 37 Statutes are presumed to be constitutional, and a party challenging a statute bears the burden of demonstrating its unconstitutionality. *People v. Goodale,* 78 P.3d 1103, 1106 (Colo.2003). When two statutes provide different penalties for identical conduct, equal protection is violated if a defendant is convicted and sentenced under the harsher statute. *Id.* Equal protection may

also be violated where two statutes proscribe different conduct, yet offer no intelligible standard for distinguishing the conduct. *Id.* Thus, a statute may be unconstitutional if it imposes a harsher penalty on less serious criminal conduct. *People v. Nguyen,* 900 P.2d 37, 39–40 (Colo.1995).

¶ 38 Nevertheless, the legislature may establish different penalties for different conduct, and "[h]arsher penalties for crimes committed under different circumstances than those which accompany the commission of other crimes do not violate equal protection guarantees if the classification is rationally based upon differences in the acts or the conduct which is proscribed." *People v. Roy,* 723 P.2d 1345, 1349 (Colo.1986). In other words, "statutory classification[s] of crimes must be based on differences that are both real in fact and also reasonably related to the general purposes of the criminal legislation." *Stewart,* 55 P.3d at 114.

¶ 39 Under the attempt and motor vehicle theft statutes, a person commits attempted motor vehicle theft if he or she knowingly engages in conduct constituting a substantial step toward obtaining or exercising control over a motor vehicle of another without authority or by threat or deception. §§ 18–2–101, 18–4–409(2), C.R.S.2015. Attempted motor vehicle theft can constitute between a class three felony and a class six felony based on the presence of aggravating factors and the value of the vehicle. § 18–4–409.

¶ 40 Under the trespass statute, a person commits first degree criminal trespass if he or she enters any motor vehicle with intent to commit a crime therein. § 18–4–502. First degree trespass is a class five felony. *Id.*

### C. Analysis

¶ 41 Wentling contends that when the People charged him with first degree criminal trespass with intent to commit motor vehicle theft, it violated his right to equal protection. We conclude that Wentling has not proved beyond a reasonable doubt that the statutory classifications noted above violate the Equal Protection Clause.

¶ 42 First, we conclude Wentling has not proved beyond a reasonable doubt that no rational relationship to a legitimate legislative purpose or government objective exists for the General Assembly's decision to punish similar conduct as attempted motor vehicle theft and first degree criminal trespass. Wentling has also not shown that this decision was unreasonable, arbitrary, or capricious.

¶ 43 To the contrary, we conclude that attempted motor vehicle theft and criminal trespass have different elements and, thus, it is permissible for the legislature to prescribe different penalties for similar conduct. Attempted motor vehicle theft requires obtaining or exercising control over another's vehicle, while trespass requires an entry into the vehicle. §§ 18–4–409, 18–4–502. In addition, the vehicle trespass statute does not require that the act be done "knowingly," as the attempt and vehicle theft statutes do. §§ 18–2–101, 18–4–409, 18–4–502; *see also People v. Anderson,* 991 P.2d 319, 321 (Colo.App.1999) (entry into motor vehicle not required to be "knowing and unlawful" for trespass) (citation omitted). Last, the vehicle theft statute contemplates different penalties based on the presence or absence of aggravating factors and the value of the vehicle. § 18–4–409(2). The trespass statute contains no such differences.

¶ 44 The differing elements of each offense, namely the mental state required and the element of proof of entry, demonstrate that the statutes proscribe different conduct and are distinguishable from each other. *See, e.g., People v. Sharp,* 104 P.3d 252, 255 (Colo.App.2004) (stating that theft and defrauding an innkeeper statutes do not violate equal protection because theft requires an intent to deprive a person of a thing of value; defrauding an innkeeper requires an intent to defraud); *People v. Whatley,* 10 P.3d 668, 671–72 (Colo.App.2000) (holding that second degree assault on a peace officer and third degree assault do not violate equal protection because only second degree assault on a peace officer requires proof that the accused had the intent to prevent a police officer from performing a lawful duty).

¶ 45 Therefore, we conclude the trial court did not violate Wentling's right to equal protection by sentencing him under first degree criminal trespass with intent to commit motor vehicle theft.

## V. Presentence Confinement Credit (PSCC)

¶ 46 Wentling contends that the trial court erred when it denied his request for eighty-nine additional days of PSCC. He contends that he is entitled to PSCC from October 11, 2011, when he arrived in Moffat County Jail, until February 7, 2012, when he finished his Utah sentence. We agree.

### A. Standard of Review

¶ 47 We review whether a district court properly awarded PSCC de novo. *See People v. Howe*, 2012 COA 177, ¶ 12, 292 P.3d 1186, 1188.

### A. Applicable Law

¶ 48 "A person who is confined for an offense prior to the imposition of a sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement." § 18-1.3–405, C.R.S.2015. For a defendant to be given PSCC, that confinement must be a result of the same incident for which a defendant is to be sentenced. *See People v. Saiz*, 660 P.2d 2, 6–7 (Colo.App.1982).

¶ 49 The statute does not require that the offense for which the sentence is imposed be the exclusive cause of the offender's confinement; rather, it requires only a "substantial nexus" between the offense and the period of confinement for which PSCC is sought. *Howe*, ¶ 13, 292 P.3d at 1188. "There is a 'substantial nexus' when a defendant is confined 'as the result of the charge for which the sentence is imposed or as the result of the conduct on which such charge is based.'" *Id.* (quoting *Schubert v. People*, 698 P.2d 788, 795 (Colo.1985)). When the confinement is caused by the charge or conduct for which the offender is to be sentenced, the trial court must award PSCC. *Schubert*, 698 P.2d at 795. However, "[a]n offender is not entitled to presentence con-

finement credit if the time served prior to the imposition of a sentence was not attributable to the charge for which the sentence was imposed." *People v. Taylor*, 7 P.3d 1030, 1032–33 (Colo.App.2000).

### B. Analysis

¶ 50 Wentling contends the trial court erred when it denied his request for additional PSCC. We agree for three reasons.

¶ 51 First, we conclude Wentling is entitled to PSCC under the PSCC statute's plain language because his confinement resulted from the same incident for which he was sentenced. Wentling was "confined for an offense prior to the imposition of sentence for said offense" because he was confined in the Moffat County Jail for the April 2011 incident from October 11, 2011 until his Colorado sentencing on May 29, 2012. § 18–1.3–405. While Wentling was confined in Utah for unauthorized control of a vehicle and in custody in Colorado to finish serving that sentence, he would not have been transferred to and detained in Colorado but for the Colorado charges. Therefore, all his time spent in Colorado was for the April 2011 incident.

¶ 52 Second, we conclude there is a substantial nexus between Wentling's Colorado offense and the period of confinement for which PSCC is sought. The entirety of Wentling's presentence confinement in Moffat County Jail is directly attributable to the same conduct, acts, or incident upon which he was sentenced, the April 2011 incident. Further, Wentling's requested PSCC concerns the period of time he spent in custody in Moffat County Jail as a result of the charges brought by the State of Colorado.

¶ 53 Third, we disagree with the People's contention that because Wentling was serving his Utah sentence before he was convicted and sentenced in Colorado, his continued incarceration while awaiting sentencing in Colorado is properly attributed to the Utah sentence. The State relies on *People v. Matheson*, 671 P.2d 968, 971 (Colo.App.1983) (asserting that when a defendant is confined prior to sentencing for a different incident from that for which he is to be sentenced, he is not entitled to PSCC). However, *Mathe-*

*son* is distinguishable because Wentling was confined for the *same* transaction, his theft of the motor vehicle in April 2011, while the defendant in *Matheson* was confined for a different incident from that for which he was sentenced; in *Matheson,* the defendant was first confined for violation of a temporary restraining order and subsequently convicted of second degree assault.

¶ 54 Therefore, we conclude the trial court erred in denying Wentling's motion to amend the mittimus to reflect additional PSCC. We reverse the sentence in part and remand the matter to the trial court. It appears to us that Wentling is entitled to 119 days of additional PSCC.[3] On remand, the trial court should determine the correct number of additional days of PSCC.

## VI. Conclusion

¶ 55 The judgment of Wentling's first degree trespass conviction is affirmed. Wentling's sentence is reversed in part and the case is remanded to amend the mittimus to include the correct additional PSCC days.

JUDGE HARRIS concurs.

JUDGE J. JONES specially concurs.

JUDGE J. JONES specially concurring.

¶ 56 I concur in the majority opinion. I write separately, however, to address a question the majority leaves unanswered: did the district court err in failing to rule that, because defendant was prosecuted in Utah for unauthorized control over a motor vehicle, prosecuting him in Colorado for first degree criminal trespass is barred by section 18–1–303, C.R.S.2015? The majority concludes that there was no plain error because any error—that is, any failure to construe the Utah and Colorado statutes at issue in the manner defendant suggests—was not obvious. I agree with that conclusion. *See People v. Lacallo,* 2014 COA 78, ¶¶ 25–32, 338 P.3d 442 (explaining that the lack of precedent construing a statute may mean an error of construction was not obvious for purposes of plain error review); *see also People v. Heywood,* 2014 COA 99, ¶ 36, 357 P.3d 201

(same); *People v. Mendoza,* 313 P.3d 637, 641 n. 4 (Colo.App.2011). But I also conclude that there was no error. In my view, prosecuting defendant for first degree criminal trespass was allowed by section 18–1–303.

¶ 57 As the majority correctly points out, the bar of section 18–1–303 presumptively applies because the Utah prosecution resulted in a conviction, the same conduct forms the basis for the Utah and Colorado prosecutions, and defendant's conduct constitutes offenses within the concurrent jurisdiction of both Utah and Colorado. § 18–1–303(1)(a); *see People v. Morgan,* 785 P.2d 1294, 1299 (Colo.1990). The issue, then, is whether the first exception to the bar, set forth in section 18–1–303(1)(a)(I), applies. That exception applies if the offense for which defendant was prosecuted in Utah requires proof of a fact not required in a prosecution in Colorado for first degree criminal trespass *and* "the law defining each of the offenses is intended to prevent a substantially different harm or evil." § 18–1–303(1)(a)(I); *see Morgan,* 785 P.2d at 1299.

¶ 58 Defendant does not argue that the Utah statute and Colorado's first degree criminal trespass statute require proof of precisely the same facts. They plainly do not. The Utah statute requires proof, for example, that the defendant actually exercised unauthorized control over the motor vehicle, intended to temporarily deprive the vehicle's owner of possession, and did not return the vehicle to the owner within twenty-four hours of the unauthorized exercise of control. Utah Code Ann. § 41–1a–1314(1), (3) (West 2015). Section 18–4–502, C.R.S. 2015, which defines the offense of first degree criminal trespass, requires proof of none of those things. Instead, as relevant to trespass of a motor vehicle, it only requires proof that (1) the defendant entered a motor vehicle (2) with intent to commit a crime therein.

¶ 59 But defendant does argue that the two statutes are intended to prevent substantially the same harm or evil. More specifically, he argues that both laws "seek to prevent an

---

**3.** Wentling, in his appeal, asked for 89 days additional PSCC; however, our calculations indicate he is entitled to 119 days PSCC for October 11, 2011 to February 7, 2012.

individual from entering a motor vehicle to take the motor vehicle, even briefly." His argument, however, fails for two reasons: it erroneously focuses on the evidence relevant to the charges in his particular case rather than on "the law defining each of the offenses," and it misperceives the harm or evil sought to be prevented by the first degree criminal trespass statute.

¶ 60 Section 18–1–303(1)(a)(I) directs the court to determine whether the statutes at issue are intended to prevent substantially different harms or evils by looking at "the law defining each of the offenses." To me, this plainly requires examination of how each offense is defined, not charged or proved. Elsewhere, the statute requires examination of whether the offenses are "based on the same conduct." § 18–1–303(1)(a). But the subsection setting forth the requirements of the first exception to the bar does not. § 18–1–303(1)(a)(I). Rather, it requires a more holistic and generalized comparison of the statutes at issue.

¶ 61 As defined, the offenses at issue are intended to prevent different harms or evils. The Utah statute is akin to a theft statute. It is plainly intended to prevent the *taking* of a motor vehicle for an extended period of time. But, as discussed more fully below, Colorado's first degree criminal trespass statute—as it relates to the entry of a motor vehicle—seeks to prevent the unlawful entry into the vehicle. And this is so regardless of the crime the offender intends to commit within the vehicle.

¶ 62 In *People v. Martinez*, 640 P.2d 255 (Colo.App.1981), a division of this court, in addressing a double jeopardy challenge to prosecution for both theft of a motor vehicle and first degree criminal trespass of the same vehicle, noted the "distinct interests" protected by the theft and first degree criminal trespass statutes: "the theft statute pro-tects the rightful possessor from loss, while the trespass statute protects the owner of a dwelling or motor vehicle from wrongful entry." *Id.* at 256. The fact the division said this in the context of a double jeopardy analysis is significant because section 18–1–303 was intended to "codif[y] the federal and state prohibitions against double jeopardy." *Morgan*, 785 P.2d at 1296.[1]

¶ 63 The *Martinez* division's articulation of the purpose of the first degree criminal trespass statute is correct. Numerous other courts have recognized that modern trespass statutes protect a landowner's interest in excluding others from the landowner's property. *See, e.g., State v. Willis*, 218 Ariz. 8, 178 P.3d 480, 483 (Ariz.Ct.App.2008); *State v. Tullo*, 366 A.2d 843, 848 (Me.1976) ("The law making an attempt to enter a dwelling house without permission was enacted to better protect the owner or occupant thereof in the enjoyment of his property . . . .");[2] *see also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 21.2, at 224 (2d ed. 2003). Thus, as implicitly recognized by the *Martinez* division, the General Assembly's placement of the prohibition against unlawful entry of a motor vehicle in a trespass statute otherwise applicable to trespass of dwellings indicates that it is the unlawful entry into the motor vehicle which is the harm or evil the statute seeks to prevent.

¶ 64 I also note that because section 18–4–502 criminalizes unlawful entry into a motor vehicle with the intent to commit a crime therein, it is structured like a burglary statute. Colorado's first and second degree burglary statutes, for example, proscribe unlawful entry into or remaining in buildings or occupied structures "with intent to commit therein a crime." §§ 18–4–202(1), 18–4–203(1), C.R.S.2015. As with first degree criminal trespass of a motor vehicle, the offense of burglary bars unauthorized entry

---

1. Section 18–1–303, C.R.S.2015, "extends the double jeopardy prohibition to situations where the dual sovereignty doctrine otherwise would operate to permit state prosecution after a separate sovereign has prosecuted the defendant for the same offense." *People v. Morgan*, 785 P.2d 1294, 1296 (Colo.1990).

2. Other courts have held that the original purpose (and perhaps a continuing purpose) of trespass statutes is to protect against violence and threats of violence. *See, e.g., Murphy v. Okeke*, 951 A.2d 783, 788–89 (D.C.2008); *People v. Goduto*, 21 Ill.2d 605, 174 N.E.2d 385, 387 (Ill. 1961). That harm or evil is, too, substantially different from that primarily sought to be prevented by Utah's temporary deprivation statute.

regardless of the crime the burglar intends to commit inside the building or occupied structure. Modern burglary statutes thus are intended to protect the security and integrity of particular enclosures. *See, e.g., People v. Nible,* 200 Cal.App.3d 838, 247 Cal. Rptr. 396, 399 (1988); *People v. Beauchamp,* 241 Ill.2d 1, 348 Ill.Dec. 366, 944 N.E.2d 319, 323 (2011); *State v. Pace,* 602 N.W.2d 764, 768 (Iowa 1999); *State v. Haines,* 621 A.2d 858, 859 (Me.1993); *State v. Office of the Pub. Def. ex rel. Muqqddin,* 285 P.3d 622, 632 (N.M.2012) (also noting that such laws are intended to protect "the right to exclude"); *Richardson v. State,* 888 S.W.2d 822, 823 (Tex.Crim.App.1994); *State v. Wilson,* 136 Wash.App. 596, 150 P.3d 144, 149 (2007). And courts have held that this purpose animates burglary laws prohibiting unlawful entry into a motor vehicle. *Beauchamp,* 348 Ill.Dec. 366, 944 N.E.2d at 323 (citing *People v. Steppan,* 105 Ill.2d 310, 85 Ill.Dec. 495, 473 N.E.2d 1300, 1304 (1985)); *Richardson,* 888 S.W.2d at 823. By analogy, therefore, the harm or evil sought to be prevented by section 18–4–502 is, again, the unlawful entry itself.

¶65 A final point: whatever the crime one intends to commit when trespassing or committing burglary, the intended crime is penalized by other laws, having their own purposes. The trespass and burglary laws must then have some purpose independent of any purpose served by the law criminalizing the intended crime. *See Nible,* 247 Cal.Rptr. at 399 (the prohibition against burglary is intended to address the danger to personal safety, "not to deter the trespass and the intended crime, which are prohibited by other laws"); *Office of the Pub. Def. ex rel. Muqqddin,* 285 P.3d at 632; *Wilson,* 150 P.3d

at 149.[3] And therefore it makes sense, at least to me, to assess the harm or evil prevented by Colorado's first degree criminal trespass statute by looking at the purpose of that statute generally, rather than the purpose of the statute addressing the crime the defendant intended to commit within the vehicle. *Cf. People v. Esch,* 786 P.2d 462, 466 (Colo.App.1989) (determining, for purposes of section 18–1–303(1)(a)(I), that a state statute criminalizing sexual exploitation of a child and a federal statute criminalizing sexual exploitation of a child by use of the mails address substantially different evils).[4] Doing so here leads to the conclusion that the purpose of section 18–4–502 is different from the purpose of Utah Code Ann. § 41–1a–1314. *Cf. People v. Lanahan,* 276 A.D.2d 906, 714 N.Y.S.2d 605, 606–08 (2000) (applying a statute similar to section 18–1–303(1)(a)(I), and concluding that prosecution for burglary was not precluded by prior prosecution in another jurisdiction for possession of property stolen during the burglary because the offenses prevent "very different kinds of harm or evil" (quoting *People v. Skinner,* 200 A.D.2d 782, 606 N.Y.S.2d 792, 793 (1994))).

¶66 In sum, because both requirements of the first exception to section 18–1–303's bar are met in this case, the People could prosecute defendant for violating section 18–4–502, and the district court did not err in entering a judgment of conviction on that charge.[5]

---

3. Indeed, the crime of burglary is complete upon entry, so long as the defendant had the requisite intent. *See People v. Gonyea,* 195 P.3d 1171, 1175 (Colo.App.2008). The defendant need not actually commit a crime in the building or occupied structure to be guilty of burglary, further indicating that the purpose served by prohibiting the underlying crime is not the purpose served by burglary statutes. This holds true with respect to the first degree criminal trespass statute as well, which requires only the intent to commit a crime within the vehicle. *See People v. Rhodus,* 2012 COA 127, ¶¶ 17–20, 303 P.3d 109 (analogizing first degree criminal trespass of a motor vehicle to burglary).

4. Such an approach is also consistent with the strict elements test we apply in the double jeopardy context, whereby we compare the elements of the offenses, not evidence, to determine whether one crime is a lesser included offense of another. *Armintrout v. People,* 864 P.2d 576, 579 (Colo.1993). As noted, section 18–1–303 is essentially a double jeopardy provision.

5. *Morgan,* on which defendant relies, does not compel the contrary conclusion. In that case, the court held that the statutes at issue did not require proof of different facts within the meaning of section 18–1–303(1)(a)(I). Therefore, the court did not address whether the second re-

quirement of the exception—prevention of differ-
ent harms or evils—was satisfied. *Morgan,* 785
P.2d at 1301–02.